Thank you, Your Honor, and may it please the Court, I'm Adam Chandler here for the United States, and I intend to reserve three minutes for rebuttal. The Court below had no trouble accepting that the defendant, Andrew Katakis, intended to delete evidence, but the Court Well, I have one question about that, okay? Because the District Court didn't, as I recall, address the last alternative theory, the log theory. That's absolutely right, Your Honor. And as to that, I would think there's an intent problem. Well, Your Honor, the record In other words, do we know that Mr. Katakis even knew there was a log, a separate log? Well, the intent is to have deleted any record or document with an intent to obstruct. And by running DriveScrubber, he was intending to clear out his entire free space, all documents and e-mails. It didn't have to be anything specific. He was But he didn't know this document existed? Even if he didn't know that he knew he was deleting something. He knew he was clearing the free space. But, no, we don't have to prove any specific document was deleted, just that some document But there's a specific intent, isn't it? There's a specific intent to have destroyed or concealed any record or document. Including one you don't know exists? That's right, Your Honor. But I don't want to lose sight of the fact that he did run DriveScrubber with the intent. He downloaded and installed it just within 48 hours of learning of the investigation in order to wipe the free space of his computer. He was trying to get rid of everything. So how does that relate to the third theory? Just printing, just pushing the delete key? That's right, Your Honor. That's another basis. I mean, that's a basis, the third basis that the district court just said, delete key will never work. That is what the district court said. And I guess I'm trying to figure out where are we getting the intent, then, on pushing the delete key? Well, the intent comes from a lot of sources, Your Honor. It is the timing. This was all taking place within 72 hours of learning of the Federal investigation. It was taking place in the office on a weekend. Let's back up a minute. Although the indictment and the instructions to not specify particular records, there was only evidence as to the existence of 10 e-mails. And therefore, I mean, you at least agree that it has to be those e-mails or something associated with those e-mails, not something else? No, Your Honor. In fact, the Swanger testimony, the eyewitness testimony, was that there were 4,000 e-mails on his Dell computer, and then when he came back Monday morning, almost all of those e-mails were gone. But there's no evidence for the content of any of those other e-mails. There was just — there was expert — the whole trial was about 10 e-mails. No, Your Honor. From the beginning, the trial was about any records or documents that may have been on those computers. And we do not need to prove that any specific document or record was deleted. And they don't need to be incriminating. Those are not the standards under Section 1519. The fact that Swanger came back that Monday morning and found almost all of those 4,000 e-mails missing on his Dell computer — Well, what — did he say what that meant? Did he mean that they weren't in his inbox or they weren't in the delete file or they weren't what? He said two things. He said they were missing and that they were deleted. Right. And it's a reasonable inference for the jury to say that that was sufficient for destruction or concealment under the terms of Section 1519. The user of the computer came back and said these computers are almost clear. That's all that's needed. Well, he said they were missing. I mean, if I came back and something wasn't in my inbox, I'd say they were missing. But that doesn't mean that they weren't somewhere else readily findable if I didn't — you know, especially if I'm not much of a computer person. Well, readily findable somewhere else is also enough to have violated the statute. I'd point to a Third Circuit case, Lessner from 2007, in which a defendant — You know, I find that case close to silly. I don't understand how if somebody in front of you is putting something in a garbage can, you're certainly not destroying it, and I don't understand how you're concealing it or anything else. If the guy is standing there and he saw where you put it, how are you concealing it? Well, the question here is what could the jury have inferred and concluded about whether these emails were concealed? And it is a reasonable inference from the user of the computer to sit back down at his computer and not see those emails that they were concealed, at the very least, from Steve Swanger. That is a reasonable inference for the jury to have made. The fact that he was — that Katakis was pressing that delete key on that Dell computer, that's yet another piece of evidence that goes to intent. He was trying to delete incriminating evidence. Does it matter if it was concealed from Mr. Swanger? That is something the jury could have used to infer that they were concealed. Absolutely, Your Honor. And I would also remind the Court that when he — Well, I'm having a tough time with that argument, in that it seems to me that what we're really asked to do here is we're asked to say putting a file in another folder on a computer is enough to say it's concealed. Especially an obvious one. Yeah. And the obvious place it would be would be in the delete folder. It seems to me that if, in fact, one moves from one folder to another, might have an attempt to conceal, but the government doesn't charge attempt. Government charge conceals. So I'm, again, I'm trying to decide if the government isn't going to say can attempt to conceal, is just putting a file in another folder enough? There was no — I mean, I look at my delete folder every day, and I guess I'm trying to figure out why that would be enough. And that's why I ask you about the intent, because if you're borrowing the intent from the fact he brings in all this machine to do what he's got to do, if that's where you're borrowing the intent, I'm having a tough time with that, because the simple delete could have happened without the machine. Two things, Your Honor. There's much more to intent. It is the timing, as well as the fact that he was searching the names of his co-conspirators on both of Slanger's computers in order to bring up files and documents to delete. That's pretty strong intent evidence. But also the question here is whether the jury could have concluded that it was concealment to have moved an email from the inbox, the default display, to another folder. I would also submit that putting it in another folder, having that be concealment for purposes of obstruction, and not putting it in the deleted items folder would be a perverse way of applying this statute. Well, except then it might actually be hard to find. But if you're looking for a deleted file, the first place you're going to look is a delete file. I mean, if you put it under, you know, my kids' photographs, maybe that's concealing it. But putting it under delete doesn't seem like you're concealing it. Well, if you put it in something called kids' photographs and that's concealment, deleting something should also be sufficient under Section 1519. We don't want to set the bar so high that the concealment has to be perfect or else we'll never have any prosecutions for obstruction. But it has to be concealed, i.e., it has to be not findable. Oh. Or covered up. Okay. Covered up. Let's put it that way. And I would submit here that it was covered up. And the jury could have concluded that it was covered up. It was moved from its normal place to a different place. It was put out of sight. And we've pointed to a number of dictionary definitions that say conceal can mean and the jury could say that it means just moving something out of sight into a deleted items folder. But that's assuming that sight is, that inbox is sight. That's right, Your Honor. And that's a conclusion that the jury was entitled to draw. But I also don't want to lose sight of the fact that the fact that But wait a minute. This is a purely legal question, no? No, Your Honor. This is a factual, record-based question. We're here on a sufficiency challenge. But why is it a – how is it a factual – the question whether moving something to a place which has a title which would identify it and which any government person or anybody looking for it would look in is concealing it? It's a legal question. I disagree, Your Honor. Because we're here on a sufficiency challenge and the question – I know we are. But that doesn't mean that that really is a fact question. That's what I'm trying to say. Well, the question here is not to construe the statute for future cases. It seems to me it is. Well, there's no challenge to a jury instruction here. The question is what the jury could have concluded. Any rational jury could have concluded about whether this specific – That depends what conceal means. Ultimately, it's a question of what does conceal mean. Well, what could the jury have thought conceal means? No. That's not the question. The question is what does conceal mean. Well, okay, Your Honor. If – I would also point to another aspect of Swanger's testimony then, which was that when he returned that Monday, he saw not just e-mails, but other files that were deleted from both of his computers. Even if you just focus on that Swanger testimony, those 10 pages, that is sufficient for the jury to have concluded that the defendant obstructed justice. You know, we've gone into a lot of technical details about downloading and running DriveScript and what effect it has. But it would be a mistake to lose sight of the farce for those trees. If you just looked at Steve Swanger's testimony and thought if this were presented as a garden variety obstruction case, is this enough? And the answer is unquestionably yes. Well, my worry about this is that if you didn't say anything about in your final argument single deletion of e-mails, I don't even think you could argue that that would be concealment. And I'm a little worried then that how that affects your other arguments. So I focused on the single deletion. But if I look at the double deletion, that's another argument you make. But where in the record do you find that Swanger ever testified that he observed the defendant deleting e-mails on his Dell or Swanger's ASUS or GD mail server? I couldn't find any. He talked about moving things around, but he never talked about deleting. Well, he testified that on the Dell he saw Katakis press the delete key, and he also said that when he returned on Monday, a lot of things were missing and that things had been deleted. But he didn't say specifically at all that things were missing from the delete file. That's what I asked him. In other words, he said they were missing, but he didn't say missing from where. So putting aside, as I understand, Judge Smith's question, the single delete theory as to the double delete theory, there would have to be some evidence that he deleted things from the delete file. Is there any evidence of that? This is why we don't call it a double delete theory. If you just take Swanger's testimony at face value, which the jury was entitled to, he said they were deleted and he said they were missing. But that's completely vague. I mean, as far as we know, all he meant is they weren't in the inbox. Well, that may have been what it meant, but to him, they were concealed or destroyed. All right. So you're abandoning the double delete theory? Absolutely not, Your Honor. What is the theory? The only evidence we have of what was single deleted was found on the Dell. We didn't find these emails anywhere on the ACES computer, Katakis's computer, or the GD Mail server. So those were not single deleted and they were not in the inbox on any of those computers. That leads to the inference that the jury was entitled to make that they had been double deleted on those computers and had gone elsewhere. So there is no direct. The answer is that there is no direct evidence anybody ever saw him doing this on those other three computers. Possibly. You're right that Swanger did not say he saw a double deletion happen. Well, that was my question. So I'm glad you finally got there. Well, thank you, Your Honor. But we can infer the double deletion from the fact that there were no traces or remnants on any of these computers other than the Dell. And the experts were in agreement and unequivocal that they expected to find some trace or remnants. Because they didn't, we can infer both that there were double deletions and that Dr. Scrubber had succeeded. Where in Swanger's testimony do I find that he found emails missing from his ASUS? So that's on page 321 of the record where he says, when I came back Monday, he's referring to both computers. He said he had a lot less stuff on them. He also refers to emails on his ASUS computer. What he actually says on the ASUS, I wasn't quite sure what was deleted and what wasn't. That's right. Because I didn't have any clear memory of what was there. But certainly on a Dell computer, almost all the emails were gone. That's right, Your Honor. He says he has a lot less stuff on them. He also testifies that emails were deleted. And throughout, from page 312 to 321, he refers to the fact that there were emails on the ASUS. The jury was entitled to infer that emails were deleted. There was also evidence that Dr. Scrubber was missing from both computers. He said he doesn't know that anything was deleted. That's what he said. He said he doesn't. He couldn't be sure what was deleted. But he said there was a lot of stuff missing on them, both computers. That's what he had been asked about. Where was that? That is also on page 321. I'd like to reserve the balance of my time for rebuttal, if the Court has no further questions at this time. Thank you. May it please the Court. My name is Elliot Peters. I represent the appellee, Andrew Katakis. The government's theory of obstruction, in this case, at trial collapsed because it was factually incorrect. Since then, the government has been trying to hold on to Mr. Katakis's conviction based on retrospective theories that are not supported by the record and were not, in fact, presented to the jury. And a very good place to start in understanding what the government really argued at trial is at excerpts of Record 163. Well, what they argued isn't necessarily dispositive, right? In other words, the question is, what could the jury have found, given the indictment, the instructions, and the record? Yes. But the reason that what they argued and what they presented is important is because it helps us understand the evidence that was presented. And there's precious little, as Your Honors have already pointed out, on any of the theories that are being discussed today. Because at trial, the government's focus with respect to Swanger's Dell, the single-delete computer in the current theory, was that that's where the e-mails could be found. All right. So ultimately, though, I mean, one of the things I was thinking about in reviewing this case is what kind of evidence we tend to accept sort of in non-white-collar kinds of crimes as sufficient. And so what we have here is right after he knew that he was under investigation, his records had been called for. He shows up. He says to this guy, you know, I can clear out my records. And he buys a program to clear out his records. And he does something on the computers. Let's take that as a black box. And then e-mails as to which there was evidence that they were sent to the other computers. They're nowhere on the computers. Why isn't that good enough right there? Because there's no evidence, A, as Judge Shub pointed out, of when any double-deleted e-mails were double-deleted. And that would be critical on the- No, he was double-deleted. We don't know. He was doing something right after. He was doing something to clean out his computers right after there was a call for the records. Well, there was a program called Drive Scrubber installed which could not and did not delete the e-mails. And that's the fundamental problem with the government's case at trial, was that they proved they said he used this program to delete the e-mails. And then the defense expert testified, no, that program will not delete the e-mails. And then the government expert got back on the stand and said, my bad, you're right, it won't delete the e-mails. So then they tried to change their theory and come up with something that might work. And the reason that that's important is that it explains the absence of the evidence and some of the things that are being argued today that really make no sense. But folks, they never put the expert on. They just never put the expert on. And instead, they put on everything I described. But forget the expert, okay? He put on this program and he said he was cleaning out his e-mails and it was right after. He knew that they were looking for the records. And in fact, they weren't there. They were there at the beginning and not there at the end. Would that be not enough? It would not be enough. And just to be clear about what we're talking about, because the government plays a little bit of musical computers about which computer they're talking about. So under that Let's leave the Dell out and the single delete out, okay? Well, then there's no evidence of any of any destruction or concealment whatsoever. If there's no evidence that he said he was cleaning it out, that he bought something that would clean it out, and then it wasn't there. And he had a motive, reason for doing it, and afterwards it wasn't there. No, I don't think that they've proved any act because the item that he bought wasn't responsible for the concealment or destruction. And then there's absolutely no proof of how the there's no proof of concealment or destruction. And that's really the state of the record on the government theories, except for the single deletion theory on the Swanger Dell, which is exactly the opposite of what the theory that they really pursued at trial was. Because the theory that they pursued at trial, as Your Honor, as Judge Berzon pointed out in the beginning, was, look, these 10 emails, which are incriminating, supposedly, are here on Swanger's Dell. But what is your position about whether it has to be the 10 emails? I mean, they're now saying, well, forget the 10 emails. It's just some records. My position is that they haven't proven concealment or deletion regardless of whether it's the 10 emails or some broader set. But what was charged and what was tried in this case was the 10 emails. And that's what you're saying. It wasn't what was charged. The charge was not limited to the 10 emails, nor were the instructions. Well, the theory at trial, and that's why I was referring to the theory. That's a different theory. That's what I'm asking you. I mean, what does the theory at trial have to do with anything? I mean, you relied on some cases like McCormick and someone where they were trying to switch gears from what was indicted and what the instruction was. But that's not true here. So the question is, does it matter that the expert evidence was about the 10 emails and that they had to prove that there was some specific records that he was after or not? I agree, Your Honor, that what matters is what the evidence was. But what the government was intending to prove helps us explain and understand what evidence they did offer and why they didn't offer or couldn't offer any evidence which would, in fact, support the theories that they're trying to argue about today. They offered an expert to testify about drive screening, but he was wrong. They didn't, for example, offer an expert to testify there are these 10 emails in the deleted items folder, and we can show from the deleted items folder metadata when they were deleted and try and hook that up somehow with Swanger's testimony. There's no evidence at all from which you could tell when any of those emails, which were in the deleted items folder, were transferred from the inbox to the deleted items folder. So I agree with Your Honor 100 percent that what matters is the evidence in the record. I refer to the theories just because I think it does help us understand how the government ended up in a position saying we've proved these crimes when they failed to do it because they set about to prove a different set of facts and failed. What about these logs? I mean, that's sort of theory 3B or something. There's a teeny bit of evidence where the expert says, well, there should have been logs, and he says that the content of the email was in the logs. The other guy says the content of the email wasn't in the logs, but that's a conflict in the evidence. So what about that? The evidence about the logs, you know, is very thin. It's one answer, and it's on ER 198. The evidence about the logs really comes in during rebuttal at best, right? You're exactly correct, Your Honor. And there's one answer, and it really doesn't make any sense. He says in one place it's in the Exchange server, and then he says it's not inside the Exchange database. And then he says that they remain for a period of time, and then they're deleted by default or by some setting. He doesn't know what that setting is. And then he says they'll start to fall off and be deleted into the free space. He doesn't explain, and we have no way of knowing what fall off means. And then on the next page he says, I would expect to find remnants, but there's no explanation of what relationship the remnant is to the log file. And then the government on summation, they don't even mention the word log files, not in their opening summation or their rebuttal. That's how much they thought of that theory. So the idea that there was, from that testimony on those two pages in rebuttal, that there was sufficient evidence for a jury to find beyond a reasonable doubt that log files were deleted, we respectfully submit that there was not sufficient evidence to do that and that that was really, as Judge Shub said in his 17-page thoughtful opinion after sitting through 23 days of trial, he said that this is an 11th-hour argument. And I think the transcript of the oral argument below makes clear that Judge Shub, who did appreciate and think carefully about this evidence, understood the significance of these arguments being raised at the 11th hour. Wasn't there some evidence below that there was a regular cleaning of the computers also, and no one knew when that happened before or after this incident? Yes, Your Honor. There was evidence about that, and the expert said he didn't know what the schedule was, so the record certainly left open the possibility that things were deleted on a regular schedule that had nothing to do with anything nefarious. The worry that I have with the single deletion theory for you, it seems to me that concealment, if in fact I go to the end of not putting a file in another file, is not concealment, it seems as if then the government can only plead concealment when they never find something. I mean, if they never find it, you know very well it's concealed. But if you just move it, and it's moved from where it was, is that not concealment? And so I'm trying to have you comment on, if I say that moving a file from one file to another is not concealment, then it seems to me that the end of that suggests that the only way we can ever allege concealment is if the government doesn't find it. And that's something that the government argued, but respectfully, Your Honor, we disagree with that because we accept, and I think we agree with Judge Berzon's point earlier in the argument today, that if it makes it harder to find, that's what the dictionary defines concealment as, and so if you prove that something's been made harder to find, as Judge Shub found, we submit correctly here, and he cited evidence. So are you suggesting that it would be concealment if it were put in another file other than delete? It, conceivably, it could, if it were, if it were put in a file where there was evidence that that was intending to throw somebody off, to conceal them, like a file labeled, you know, Christmas car, Christmas messages to my grandkids. And so it seems to me that answer gets you in trouble because, I mean, in this instance, I mean, it's a pretty good inference that, I understand we don't know when he moved it to delete, but suppose we knew when, when he moved it to delete on that very day. Then he may well have intended to conceal it, but as you've been saying all along, he also has to have concealed it. So the question still is, what does conceal mean, as putting it somewhere that any idiot's going to look for it, concealing it? It's, if it's made, if it's made harder to locate, substantially harder to locate, and the evidence in this record, which Judge Shub cited to, was testimony from the agent, said it was very easy to find. It was the first place I looked. And I found it very readily, because it was in the. If it wasn't that easy, then it's not concealment? Well, it. I mean, I, I, the pendulum is, is narrow, and I guess I'm trying to figure out what is my definition of conceal that I should buy, and where do I get it? Well, the, I think it is a legal question. I think it, it comes from, the word comes from the statute, and that it, and it means make something. Right. If you know somebody's coming to search your house. Beg your pardon? If you know somebody's coming to search your house, and you have an incriminating document on top of your desk, and you put it in a drawer, is that concealing it? I, I don't believe so. No. Because they're going to open it for you. It's your, it's your theory, right? If you know they're coming, you know they're going to search. It's just, it's, it's, it's a normal place to put something. There's nothing inherently wrong with it. It doesn't seem like a. What if I put it under the silverware? You know, I think. Because I'm, I'm only saying that because that's what my mother-in-law used to do. What, what if I put it under the silverware? Is that concealing it? It, it, I, I think it could be. So then you could get, so then they could be indicted. I think. But just in a drawer, not under the silverware isn't enough? Where's your mother-in-law? I need your mother-in-law to. I mean, that's the intent of the question. That's the thing that I'm, that's the thing that I'm crapping with. Because to move it from this to delete, is that enough for conceal? Or is it just an attempt to conceal? And then, how far does conceal have to go? Because the only theory that I think stands is single deletion. Yep. And two, two responses to, to that. One is, please look at the, the testimony, Swanger's testimony about the single delete. I don't believe there's any proof, really, that stands up about single delete. Because if you look at, at ER 320, he's talking about Drive Scrubber. He says he installed the program and then he pressed the delete button. And there's absolutely no evidence about what that would do. We, we infer that we must be talking about Outlook because we use that and we're familiar with it. But that isn't what they proved. And that, that isn't what the evidence is. And, and the word conceal, I believe, you're right that there's no attempt here. They didn't charge attempt. There's no attempt under 1519. So it's got to be a successful or a real concealment. And our position on this case is that just moving it from the inbox to the deleted items folder isn't enough because it didn't conceal it. It didn't make it harder to find. He may have attempted, but it wasn't successful. I don't even, I mean, he was not charged with attempt. And I suppose the, the, the, the, that argument would be stronger, but it's not relevant to this case, the attempt argument. I mean, I guess we don't even know that he actually, well, I guess maybe we do know he moved it, or at least we have a good information. Well, except Swanger said he never moved anything. Swanger said that he never deleted e-mails. Right. And then, and then certain e-mails were found in his deleted items folder. Right. But he also says that, that he was using this program. I mean, in the very answer where he says. Who was using this program? That, that, that, that Katakis was. He's, what, what, what Swanger says is that Katakis installed this drive scrubber program, and then it took a few minutes to boot up, and then he pressed the delete key. But there's absolutely no evidence about what pressing the delete key using that drive scrubber program would do. And, and, and, and keep in mind, the reason that they elicited that testimony was because at that point in time, their whole focus was on proving that drive scrubber accomplished the deletions. Now. So you're saying they needed to have some expert get on there and say, if you have anything on your computer and you want to move it out of it, pushing the delete key will do it? They needed that kind of an expert? Well, no, but I, I, I think. I mean, it seems to me that whether the scrubber would do it or not, the fact they're in the delete box says something. But it, it says that, that, that at some point in time they were transferred to the delete box. It doesn't say when or who did it. And they needed to prove both in order to convict Mr. Katakis. But, but they also did have the evidence, as my colleague suggested, that Swanger said he never deleted. He said, he said that he didn't delete, but the, the, that doesn't mean that Mr. Katakis did it. And they certainly didn't prove when that happened or how it happened. And then, so, so you're left with. What, what this whole case reminds me of, you know, somewhat out of context, is a Title VII case where the Supreme Court, where there were no African-Americans in a certain, in certain jobs. And they said, well, look, this is the inexorable zero. I mean, i.e., you know, we need some, you can infer from the fact that there were simply no such people that there was something going on here. Now, why couldn't the jury simply infer from the fact that there, that, that there were, there was evidence that these e-mails existed, there was evidence he was trying to, he was trying, he wanted to, to, to clear them out, both because he said so and because he bought this system, and they're not there? Why isn't that just enough? But, because they haven't proven, they haven't offered. On the three other computers now. Forget the Dell. Okay. So if we forget the Dell, there's just, the, the only computers that were present that day, the day that Swanger and Katakis are present, the only computers that are present that day are Swanger's ACES and Swanger's Dell. So if we forget the Dell, the evidence about the ACES, which Your Honor cited before, is he says, on the ACES, I wasn't quite sure what was deleted and what wasn't, because I didn't. Sotomayor, the e-mails, the way they were sent, in terms of what, where they said it was being sent, it would have been in the ACES? I'm sorry, I did, I just. I presume that the e-mails said where they were being sent. In other words, what you could tell, the reason why the absence is significant is because the e-mails say they're being sent somewhere. Well, but this, yes, but the e-mail address on a number of these ten e-mails was global.com, which is a fictional e-mail address which doesn't really exist, which is what was the basis for the defense experts saying, I don't think those ten e-mails are real to begin with. So the addressee, if you will, on a number of them was a fictional, non-existent and non-real e-mail address, which was a mystery below, but was suggestive of the possibility that Swanger had actually come up with these e-mails after the fact. So the addressee part, it just leads us into another evidentiary problem that the government had here. I'm out of time. I'm happy to answer any more questions that the Court has for me. That's fine. Thank you. Thank you very much, Your Honor. We'll give you an extra three minutes since he went over his time. Thank you, Your Honor. It is tempting here, despite the standard of review, to parse and parse this record, but the standard of review demands that we step back. We look at everything as a whole, just as the jury was instructed to do. Take all inferences in favor of the government, and then ask whether any rational trier of fact could have found, based on the record. Let me ask you this very last question. What is the record with regard to where one would expect these e-mails to be, given the internal evidence from the e-mails? Your Honor, if the Court is looking for where those e-mails actually were, this record is going to disappoint. Well, not where they actually were. Where one looking at the e-mails would have thought they were. I mean, if I have an e-mail and it says I'm sending it to Judge Smith at ca9.uscourts.gov, that would lead you to think that it would be in Judge Smith's inbox or somewhere on his server, unless he got rid of it. So what is the evidence here about that? Yes, Your Honor. The evidence that the experts agreed on was that a double-deleted e-mail on the server would be in the Exchange database. I'm not sure what I'm asking you. And I think you can figure out what I'm asking you. I don't think it's that difficult. I'm asking you, looking at the e-mails themselves as they were in the Dell delete file, where would one expect to find the received e-mails or the sent e-mails? Where would one expect to find other versions of that same e-mail because they were either sent or received from another one of these three or four computers? Yes, Your Honor. Kattakis was a sender or receiver of each of those ten e-mails, and so we would have expected somewhere on Kattakis's computer to have found a remnant or trace. We also. A text of which computer? That's what I'm trying to ask you. So Kattakis had his own Dell. There was also the server, which was a computer. These e-mails, I don't know why this is such a pulling teeth problem. I was just told that some of these e-mails were going to some address called global.com, which doesn't exist. Is that true? Yes, Your Honor. That was a problem with the FBI e-discovery program, and there's an explanation for that on the record, most succinctly at transcript page 3081. That is on the record. Our expert explained all of it to the jury why that global.com was showing up. It was just a. So what? I mean, as I understand it, the whole theory was that these e-mails that you found in the Dell computer in the delete file, one could tell looking at them that they should have been on one or more of the other computers. What? Where? Which ones? How can you tell that? Because Kattakis was a sender or receiver, and it would have gone through that server. The server recorded every. That's the server that we're talking about, not any other computer. Also the server, yes, Your Honor. Anything that passed through that server, we would have expected to find remnants or traces, and both experts agreed to that. Since neither of them found a remnant or trace on that server, they gave different explanations for why. All right. So we should focus on the server, not on any of the other computers. Yes, Your Honor. That is a big part of it. But there are. We don't know that anybody. I mean, as to the server, there's no direct evidence that he ever did anything with the, you know, driver scraper thing. He downloaded and installed driver scraper on the server. Right. But not that he ever did anything with it. Well, we can infer by the fact that there aren't remnants or traces that he did run driver scraper on the server. That is our expert's testimony on rebuttal. He was cross-examined. And there was a surrebuttal with the defense expert. They both agreed that they expected to find remnants or traces on that server. And because they didn't, the jury was entitled to infer that driver scraper had successfully eliminated records or documents for purposes of 1519. So is that your ultimate theory? I mean, you have many theories, but. We have interlocking, mutually reinforcing theories, Your Honor, that paint a very clear and consistent picture of a course of conduct here, that if it is insufficient for an obstruction conviction under 1519, then frankly, I don't know what's going to be sufficient. We have old-fashioned eyewitness testimony combined with technical forensic experts that all work together. We have time stamps. We know when things were taking place. But this is an unusual case in that you had an expert who to some degree fell apart. Well, no, Your Honor. He did — we narrowed our focus, and he clarified his testimony, but that's just the nature of the adversarial process. He did his case in chief. He didn't say originally both in his report and understand that the e-mail should have been in the free space and then retract that? He adhered to his position that Dreisberger did clear some remnants of those e-mails out of the free space. That was — he clarified it when he was there on rebuttal. The defense had a chance to cross-examine him, and there was a serve rebuttal with the other expert. That's the way the adversarial process works, and we narrowed in on a theory that, although they didn't give the same explanation, both experts said — Well, the only three theories that I've got to look at right now, as I understand it, is the transmission logs theory, the double deletion of e-mails theory, or the single deletion of e-mails theory, right? I think that's fair, Your Honor. Yes. So if I can't go on any one of those theories, you're out? I do think that's fair, Your Honor, but there's two very simple ways to look at those. You either look at the — Well, I'm just trying to narrow it down, because the government has had more theories than that on different occasions, and I'm trying to narrow it down to the theories which you're really going on now. Yes, Your Honor. Those are the theories in our brief, and a very simple decision could either just be the 10 pages of Medlin's rebuttal, where he talks about logs, or the 10 pages of Swanger eyewitness testimony. Well, even Medlin said the transmission logs were wholly separate from the e-mails themselves. He actually said that the full content of the e-mails was in those logs. But he also said that he couldn't say when they would have, quote, fallen into free space. That's right. He had no idea what the timeframe was. He didn't know what the default was, but the fact was he expected to find some of those e-mails, and Vilfer said the same thing. But he didn't say why. I mean, he said at some point they would have fallen into e-mail, into free space. He didn't say when. That's right. He had no idea when. Well, these investigations were being done several years after the fact. And the reason there are 10 e-mails, the reason we're talking about 10 is because that was the number of e-mails he needed to search for in order to be confident in concluding that it was user action that had created this pattern of deletion and not some automated process. That's why it's 10 e-mails. There's nothing special about these e-mails. And so he went looking for 10. He got satisfied that a user action had caused these deletions and not some automatic process, and that's why he drew the opinion he did and adhered to it on rebuttal. Thank you very much, Your Honors. Thank you. Okay. Thank you. The case of United States v. Kattakis is submitted.
judges: Berzon, N.R. Smith, Collins